PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD JOSEPH GALPIN, | ) | |
| | ) | CASE NO. 4:25CV1566 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WARDEN IAN HEALY, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

*Pro Se* Plaintiff Edward Joseph Galpin, a federal prisoner at the Elkton Correctional Institution ("FCI Elkton"), filed this *Bivens*[1] action against FCI Elkton Warden Ian Healy. In the Complaint (ECF No. 1), Plaintiff claims that FCI Elkton is denying him due process and equal protection and violating his First Amendment rights by restricting his access to email based on the nature of his crimes. He seeks an order granting him access to email.

**I. Background**

The Federal Bureau of Prisons ("BOP") allows inmates to have limited access to computer services through the Trust Fund Limited Inmate Computer System ("TRULINCS"). Although inmates do not have access to the Internet, they are able to use TRULINCS to monitor their inmate trust accounts, send internal communications to prison staff, and use messaging services, including email, to communicate with others outside of the prison. *See* BOP Program Statement 4500.12, § 14.1 pg. 126. By participating in the TRULINCS program, inmates

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

(4:25CV1566)

consent to having all of their activity, including email and transactional data, monitored and retained by prison personnel. Emails may only be exchanged with authorized contacts, and can be rejected by prison staff if they are deemed to jeopardize the safety of the institution or the public. *See* BOP Program Statement 4500.12, § 14.3(d) pg. 127. Inmate use of TRULINCS is a privilege and the Warden or Associate Warden may deny an inmate access to all or any part of it. The BOP encourages Wardens to provide all inmates with access to TRULINCS terminals due to its self-service nature. *See* BOP Program Statement 4500.12, § 14.9 pg. 130.

Inmate access to the Public Messaging Service is more restricted than other TRULINCS services, as Public Messaging involves communication with persons in the community and allows the possibility for continued criminal activity or activity that may jeopardize the safety and security of the institution. *See* BOP Program Statement 4500.12, § 14.9 pg. 130. An inmate's exclusion from participation in the Public Messaging Service of TRULINCS is determined by his individual history of behavior. *See* BOP Program Statement 4500.12, § 14.9(a) pg. 130.

Sex Offenders are a group that receives greater scrutiny before access to public messaging services is granted. With regard to sex offenders, the Program Statement provides in relevant part:

> (1) **Sex Offenders.** Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction.

BOP Program Statement 4500.12, § 14.9(a) pg. 130. To aid in this assessment, the Program Statement states:

2

(4:25CV1566)

> As a method of identifying these inmates, staff responsible for local sex offender management should review inmates with SENTRY CMA Walsh Assignments of Certified, With Conviction, and No Conviction, to determine if their participation in the Public Messaging Service poses a realistic threat. TRULINCS automatically applies a temporary restriction on inmates' accounts with the above SENTRY CMA Walsh Assignments. These restrictions may be over-written when deemed appropriate by staff responsible for local sexual offender management and approved by the Warden.

BOP Program Statement 4500.12, § 14.9(a)(1) pg. 130. Program Statement 4500.12 does not categorically exclude sex offenders from TRULINCS email services. Instead, BOP officials dedicated to sex offender management individually review every inmate, including Plaintiff, for access to TRULINCS services. The Warden has discretion to grant access to sexual offenders in non-threatening cases.

Plaintiff alleges that he has been denied access to TRULINCS email services based on the criminal behavior that led to his conviction. Specifically, Plaintiff was convicted in the United States District Court for the District of Connecticut of production of child pornography and distribution of child pornography. See *United States v. Galpin*, Nos. Nos. 3:21-cr-00026-JAM-1, 3:21-cr-00032-JAM-1 (D. Conn. May 20, 2022). He contends that despite the nature of his crimes, his security risk is low, and his recidivism score is minimum. Plaintiff states that he has been at FCI Elkton for three years and has not had any disciplinary infractions. He indicates that he participates in programming and works within the prison to stay busy. Plaintiff contends that with the safeguards that are in place for TRULINCS, granting him access to email will not present a danger to the community or the institution. He asserts that FCI Elkton is violating his First Amendment right to communicate with members of the public outside of the prison. Furthermore, Plaintiff asserts that the Warden denied him due process and equal protection by

3

(4:25CV1566)

treating sexual offenders differently than other prisoners. He also alleges that there is disparity in the way sex offenders are treated when compared to each other, as some sex offenders are granted email privileges. Plaintiff seeks an order from the Court granting him access to email. *See* Complaint (ECF No. 1).

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief may be granted or if it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. Twombly, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

(4:25CV1566)

*Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. Law and Analysis

Before proceeding to the merits of the case at bar, the Court must decide whether *Bivens* provides a cause of action in this context. The United States Supreme Court has clarified that federal courts should refrain from extending *Bivens* outside of the three specific contexts in which it has already been applied, absent the presence of special factors. *Ziglar v. Abbasi*, 582 U.S. 120, 135-36 (2017). Congress provided a specific damages remedy for Plaintiffs whose constitutional rights were violated by state officials through 42 U.S.C. § 1983; however, they did not provide a corresponding remedy for constitutional violations by federal officials. The Supreme Court's 1971 decision in *Bivens* recognized an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See* 403 U.S. at 389, 396. Since then, the Court allowed *Bivens* remedies in only two other contexts, the last being over forty-five years ago: (1) in a Fifth Amendment gender discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) in an Eighth Amendment deliberate indifference to medical needs case, *Carlson v. Green*, 446 U.S. 14 (1980). *See Egbert v. Boule*, 596 U.S. 482, 490-91 (2022). The Court has not approved of an implied remedy under the Constitution itself. *Ziglar*, 582 U.S. at 131-32. Plaintiff's claims for denial of First Amendment rights, Due Process and Equal Protection, based on his status as a sex

(4:25CV1566)

offender, do not fall within the three specific contexts that the Supreme Court recognizes for *Bivens* claims. *Bivens* does not provide a cause of action and Plaintiff has not cited any vehicle by which his constitutional claims can be considered. This case must be dismissed.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| | |
|---|---|
| October 20, 2025 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |